UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| PATRICK TRAWICK, | ) |  |  |
|---|---|---|---|
|  | ) |  |  |
| Plaintiff, | ) |  |  |
|  | ) |  |  |
| v. | ) | No.: | 3:24-CV-212-DCLC-DCP |
|  | ) |  |  |
| BRIAN ELLER, STEVEN ANDREWS, FRANK STRADA, and LISA R. THOMAS, | ) ) ) | | |
|  | ) |  |  |
| Defendants. | ) |  |  |

## MEMORANDUM AND ORDER

Plaintiff Patrick Trawick, a prisoner in the custody of the Tennessee Department of Correction ("TDOC") incarcerated at the Northeast Correctional Complex ("NECX"), is proceeding pro se in this civil rights action under 42 U.S.C. § 1983 against Defendants Brian Eller, Steven Andrews, Frank Strada, and Lisa Thomas in their respective official capacities seeking declaratory and prospective injunctive relief [*See* Doc. 4, p. 9–10]. Plaintiff's only remaining claim in this action is that Defendants enforce TDOC "policies or customs that permit minimum restriction and close custody inmates to be housed in the same unit"[1] [Doc. 33, p. 2; Doc. 1, ¶¶ 12, 23, 34, 45]. Before the Court is Defendants' motion for summary judgment [Doc. 56], which is accompanied by a memorandum [Doc. 57], statement of material facts [Doc. 58], and declaration [Doc. 59]. Plaintiff filed a response in opposition to Defendants' motion [Doc. 64]. Upon consideration of the Parties' pleadings, the summary judgment evidence, and the applicable law,

---

[1] All other claims were dismissed by the Court's Memorandum and Order screening Plaintiff's complaint in in accordance with the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A.

the Court finds Defendants' motion for summary judgment [Doc. 56] should be granted and this action dismissed.

I.      SUMMARY JUDGMENT EVIDENCE[2]

On September 21, 2023, Anthony Washington, a "known . . . violent and close custody inmate[,]" stabbed Plaintiff, a "minimum restrict inmate[,]" in the face with a homemade knife in Unit 8 of NECX [Doc. 1 p. 3]. Plaintiff sustained various injuries to his face, shoulder, and back and was housed in the prison's medical unit for three weeks [*Id.*].

Currently, and at the time Plaintiff was attacked, TDOC had in place a written policy titled "404.09 Protective Services" that concerns the provision of protective services for inmates who are deemed to be at risk of physical harm from other inmates [Doc. 59, ¶¶ 4–10, p. 7–22; Doc. 58, ¶ 3]. These protective procedures provide that whenever information is received that suggests that an inmate might be at risk of harm from another inmate, the putative "at-risk" inmate is notified, an inquiry into the potential risk is commenced, the information is forwarded to the Assistant Warden of Security, and a determination is made as to whether the potential "at-risk" inmate requires immediate protective services, such as cell relocation, restriction to the inmate's cell, or segregation [Doc. 59 ¶ 7, p. 7–8.].

After the immediate protective-services determination, a full inquiry is conducted [*Id.* ¶ 8]. This inquiry is fully documented, and the findings are forwarded to the Chairman of the classification committee [*Id.*]. A protective services hearing is then held where the reputed "at-

---

[2] As Plaintiff's complaint is filed under penalty of perjury [Doc. 1 p. 11], the Court treats the complaint and its factual recitations as summary judgment evidence. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (recognizing that a "verified complaint . . . carries the same weight as would an affidavit for the purposes of summary judgment"). And because Plaintiff failed to respond to Defendants' statement of material facts [Doc. 58], the Court considers those facts undisputed. Fed. R. Civ. P. 56(e)(2) (When "a party . . . fails to properly address another party's assertion of fact[,]" a court can consider the fact undisputed for purposes of summary judgment).

risk" inmate appears and a determination is reached as to whether there is a need for protective services [*Id.* ¶ 9]. If protective services are warranted, a variety of options are available, including housing reassignments, closer supervision, transfer to a different facility, or segregation [*Id.* ¶ 9, p. 9].

The protective services policy also provides that a list of incompatible inmates—those who pose a significant and substantial potential risk for physical harm to one another—be maintained on the Tennessee Offender Management Information System ("TOMIS") database [*Id.* ¶ 10, p. 7]. This database is accessible through all correction officials at facilities that house TDOC inmates [*Id.* ¶ 10]. If there are any incompatibles, prison staff make notations in TOMIS and assign appropriate housing so that the incompatible inmates remain separated [*Id.*]. TDOC reviews each inmate's classification annually [*Id.* ¶ 11].

Inmates at NECX can advise NECX staff of any potential incompatible inmates [*Id.* ¶ 12]. NECX staff may also initiate incompatibility inquiries based on information or knowledge obtained from other inmates, observations, or internal affairs investigative findings [*Id.*]. Any such information or complaints are fully investigated by NECX staff and, if warranted, protective services are provided [*Id.*]. All NECX security staff members were trained on the contents of the Protective Services policy and the procedures provided therein [*Id.* ¶ 13].

Any report of a risk to an inmate is recorded on TOMIS [Doc. 58 ¶ 7]. Plaintiff's TDOC file does not contain any protective services inquiries or TOMIS entries indicating Plaintiff was at risk of harm from Inmate Washington prior to September 21, 2023 [Doc. 59 ¶¶ 14, 15]. Had any NECX staff member received any information that Plaintiff was at risk from Inmate Washington, a protective service inquiry/routing form would have been prepared and a TOMIS entry made [*Id.* ¶ 14].

On September 27, 2023, a protective services panel reviewed Plaintiff's protective custody status and declined to place him in protective custody based on Plaintiff's assertion that he was not in fear for his life [*Id.* ¶ 16, p. 24]. Plaintiff assured TDOC officials that he could live safely anywhere at NECX [*Id.* ¶ 17, p. 24]. Warden Eller instructed that an incompatible be noted in Plaintiff's records, and that Plaintiff was to remain in administrative segregation pending transfer [*Id.* at 24].

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is deemed "material" if resolving that fact in favor of one party "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To establish an entitlement to summary judgment, the moving party must demonstrate that the nonmoving party cannot establish an essential element of their case for which they bear the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 322; *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate by setting forth specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), "conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990), or by a mere "scintilla" of evidence, *Anderson*, 477 U.S. at 252. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party,"

4

then there is a genuine dispute as to a material fact. *Anderson*, 477 U.S. at 248. If no proof is presented, however, the Court does not presume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan*, 497 U.S. at 889).

III. ANALYSIS

Defendants maintain that they are entitled to summary judgment in their favor because the undisputed material facts show that Plaintiff does not have standing to bring this action since he cannot prove an imminent risk of impending harm, and that, for the same reason, the *Ex Parte Young* exception does not apply to his claim [Doc. 56]. Alternatively, they argue that summary judgment should be granted because the undisputed evidence shows TDOC officials had no notice of any potential risk to Plaintiff by Inmate Washington, and that TDOC has adequate protective-services policies for "at-risk" inmates [*Id.*].

Plaintiff, meanwhile, states that he can demonstrate standing, because Defendants admit both that close-custody inmates are housed in the same pod as "minimum restrict" inmates, and Plaintiff requested to be moved to a different unit prior to September 21, 2023 [Doc. 64, p. 14; *see also* Doc. 64-1, ¶¶ 11, 25, 45, 57]. And he otherwise argues that pervasive, well-documented incidents of inmate attacks at NECX are sufficient to permit a trier of fact to find Defendants had actual knowledge of the risk to Plaintiff [Doc. 64, p. 11–12].

A. Standing

Defendants first maintain that Plaintiff lacks standing to bring a claim for injunctive relief, because he cannot prove an impending risk of injury [Doc. 57 p. 3–4].

Federal court jurisdiction is constitutionally limited to "'Cases and 'Controversies.'" *Safety Specialty Ins. Co. v. Genesee Bd. of Comm'rs*, 53 F.4th 1014, 1020 (quoting U.S. Const.
5

art. III, § 2).  The case-or-controversy requirement requires a plaintiff to establish his or her standing to sue.  *See, e.g., FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).  The plaintiff bears the burden of proving standing "with the manner and degree of evidence required at the successive stages of litigation."  *Lujan*, 504 U.S. at 561.  At the summary judgment stage, a plaintiff "must introduce evidence setting forth 'specific facts' that establish" standing.  *Tenn. Conf. of the NAACP v. Lee*, 139 F.4th 557, 566 (6th Cir. 2025) (citation omitted).

A plaintiff seeking injunctive relief must show "actual present harm or a significant possibility of future harm."  *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997).  That harm must be "*certainly impending*" to confer standing.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  Merely demonstrating past harm cannot entitle a plaintiff to "injunctive or declaratory relief[,]" *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019), as the fact that an injury occurred in the past "does nothing to establish a real and immediate threat that" it will occur in the future, *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983).

Here, Plaintiff's claim for a permanent injunction alleges that the policy allowing inmates with different custody levels to be housed together creates an unconstitutional risk of harm to the less violent inmates [*See, e.g.,* Doc. 4, p. 8].  He does not allege that there is a "certainly impending" injury that he will suffer absent a permanent injunction against NECX's housing policy.  The undisputed evidence before the Court is that TDOC has procedures in place to protect inmates who believe they are at risk of harm from other inmates, including protective-custody placement and incompatible designations [*See e.g.,* Doc. 59, p. 7–22].  It is undisputed that Plaintiff has not requested protective custody [Doc. 58, ¶ 6].  And, in fact, the competent evidence demonstrates that days after the attack, Plaintiff told TDOC officials that he was not in fear of his

6

Case 3:24-cv-00212-DCLC-DCP   Document 72   Filed 02/24/26   Page 6 of 10
PageID #: 864

life and could live safely anywhere on the NECX compound [*Id.* ¶¶ 8–9]. Given the absence of proof of "certainly impending" harm to Plaintiff and TDOC's safeguards for at-risk inmates, Plaintiff cannot demonstrate an imminent future injury to confer standing for his claim for a permanent injunction. Accordingly, Plaintiff's claim must be dismissed.

> **B.  Sovereign Immunity**

Additionally, the Eleventh Amendment bars claims against states and their agents unless the state waives its immunity or Congress expressly abrogates it. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996) (citation omitted); *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). The Supreme Court created an exception to that rule in *Ex Parte Young*, which permits official-capacity actions against state officials where the suit "seeks only prospective injunctive relief in order to end a continuing violation of federal law." *Seminole Tribe*, 517 U.S. at 73 (citation omitted); *Ex Parte Young*, 209 U.S. 123 (1908). To determine if the *Young* exception is applicable, courts "need only conduct 'a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) (quoting *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003)). This element of *Ex parte Young* overlaps with Article III standing. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015).

In screening Plaintiff's complaint, the Court recognized Plaintiff had alleged an "ongoing, substantial risk to inmates" because of TDOC's alleged failure to segregate inmates by classification [Doc. 4, p. 8]. But the undisputed evidence is that, within days of being attacked, Plaintiff admitted to TDOC officials that he was not at any risk and could safely live anywhere on the compound [Doc. 58, ¶¶ 8–9]. And Plaintiff's conclusory allegation of risk, even in a verified complaint, is insufficient to defeat Defendants' well-supported summary judgment motion. *See, e.g., Williams v. Browman*, 981 F.2d 901, 904 (6th Cir. 1992) (finding that for evidentiary

7

purposes, plaintiff's verified complaint, which contained "nothing but mere conclusory allegations" could not survive a motion for summary judgment" in favor of the defendants); *Meeks v. Schofield*, 10 F. Supp. 3d 774, 784 (M.D. Tenn. 2014) ("Accordingly, speculative and conclusory allegations, even if made within a verified complaint, are insufficient to withstand a motion for summary judgment."). Therefore, because Plaintiff cannot establish an ongoing substantial risk, the claim against Defendants is otherwise barred by sovereign immunity and must be dismissed.

### C. Deliberate Indifference

Finally, the Court agrees with Defendants' alternative argument that because the undisputed proof shows that TDOC officials had no notice of any potential risk to Plaintiff from Inmate Washington, and TDOC has adequate policies to protect "at-risk" inmates, Plaintiff cannot demonstrate any deliberate indifference was shown to his personal safety [*See* Doc. 56].

The Eighth Amendment's prohibition on "cruel and unusual punishment . . . imposes duties" on prison officials. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). One of those duties requires prison officials to "take reasonable measures to guarantee the safety of" inmates. *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 527–27 (1984))). However, it is well settled that not "every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Rather, to establish an official's liability under such circumstances, "the plaintiff must show that: (1) objectively, he was incarcerated under conditions posing a substantial risk of serious harm; and (2) the official acted with deliberate indifference to inmate safety, meaning the official was subjectively aware of the risk and fail[ed] to take reasonable measures to abate it." *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021) (citations and quotation marks omitted) (alteration in original).

8

As the Court previously noted, Plaintiff argues that his claim is supported because (1) Defendants admit both that close custody inmates are housed in the same pod as minimum restrict inmates, (2) Defendants admit that Plaintiff requested to be moved to a different unit prior to September 21, 2023, and (3) pervasive, well-documented incidents of inmate attacks at NECX are sufficient to impute to Defendants knowledge of a risk to Plaintiff [*See generally* Doc. 64]. But Plaintiff has not come forward with any evidence to support his allegation that there is a culture of pervasive violence at the NECX. And Plaintiff cannot establish deliberate indifference merely by demonstrating that Defendants knew of Inmate Washington's violent background, or that he was of a different classification level. *See Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992) ("The fact that the defendants knew that [the prison] housed many violent prisoners and that prison violence did occur is not sufficient to constitute deliberate indifference."). And while the undisputed evidence demonstrates that Plaintiff did request to be moved to a different unit, there is no competent evidence that Plaintiff requested to be moved to a different unit because he believed himself to be at risk of harm from Inmate Washington. Instead, the evidence demonstrates the opposite—that TDOC officials had no reason to suspect that Plaintiff was vulnerable to an attack from Inmate Washington prior to September 21, 2023. *See Taylor v. Little*, 58 F. App'x 66, 68 (6th Cir. 2003) (finding summary judgment appropriate where plaintiff failed to show that prison officials had reason to suspect another inmate to whom he had no connection would harm him).

Moreover, the competent evidence demonstrates that, at the time of the attack, all TDOC security staff were trained on TDOC's written policy providing protective services for inmates deemed to be at risk of physical harm from other inmates [Doc. 58, ¶ 3, 4; Doc. 59, ¶ 5]. But there is no record of any protective services inquiry/routing forms concerning Plaintiff, and it is

undisputed that such an inquiry/routing form would have been prepared had Plaintiff or any other source indicated to an NECX staff member that Plaintiff was at risk of harm from Inmate Washington [Doc. 58, ¶ 6]. Further, the proof indicates that any incidents of significance or risk to an inmate are recorded on TOMIS, and there are no entries on TOMIS indicating Plaintiff being at risk of physical harm from Inmate Washington [*Id.* ¶ 7]. In fact, it is undisputed that Plaintiff admitted that he was not in danger and could live anywhere on the compound [*Id.* ¶¶ 8–9].

Accordingly, no reasonable juror could conclude that Defendants had notice of a potential "substantial risk to serious harm" to Plaintiff's health or safety at the hands of Inmate Washington that they failed to abate. *See Farmer*, 511 U.S. at 837. They are entitled to summary judgment.

## IV. CONCLUSION

As the Court found above, no genuine disputes of material fact preclude resolving this case on Defendants' motion. Accordingly, Defendants' motion for summary judgment [Doc. 56] is **GRANTED**.

Further, it is **CERTIFIED** that any appeal from this decision would not be taken in good faith and would be totally frivolous. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**SO ORDERED**.

s/Clifton L. Corker
United States District Judge